# BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS *v.* UNITED STATES

CERTIORARI TO THE COURT OF CUSTOMS AND PATENT APPEALS

No. 538. Argued February 17, 1933.—Decided March 20, 1933

*Mr. Sveinbjorn Johnson* for petitioner.

50

52

*Solicitor General Thacher,* with whom *Assistant Attorney General Lawrence* and *Mr. Erwin N. Griswold* were on the brief, for the United States.

54

56

[redacted]

*Messrs. William A. Schnader,* Attorney General of Pennsylvania, and *William A. Stevens,* Attorney General of New Jersey, by leave of Court, filed a brief as *amici curiae.*

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The University of Illinois imported scientific apparatus for use in one of its educational departments. Customs duties were exacted at the rates prescribed by the Tariff Act of 1922, c. 356, 42 Stat. 858. The University paid under protest, insisting that as an instrumentality of the State of Illinois, and discharging a governmental function, it was entitled to import the articles duty free. At the hearing on the protest, the Customs Court decided in favor of the Government (59 Treas. Dec. 747) and the Court of Customs and Patent Appeals affirmed the decision. 61 Treas. Dec. 1334. This Court granted certiorari. 28 U.S.C. § 308; 287 U.S. 596.

The Tariff Act of 1922 is entitled—"An Act to provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, and for other purposes." The Congress thus asserted that it was exercising its constitutional authority " to regulate commerce with foreign nations." Art. I, § 8, par. 3. The words of the Constitution " comprehend every species of commercial intercourse between the United States and foreign nations. No sort of trade can be carried on between this country and any other, to which this power does not extend." *Gibbons* v. *Ogden,* 9 Wheat. 1, 193. It is an essential attribute of the power that it is exclusive and plenary. As an exclusive power, its exercise may not

be limited, qualified or impeded to any extent by state action. *Id.* pp. 196–200; *Brown* v. *Maryland,* 12 Wheat. 419, 446; *Almy* v. *California,* 24 How. 169, 173; *Buttfield* v. *Stranahan,* 192 U.S. 470, 492, 493. The power is buttressed by the express provision of the Constitution denying to the States authority to lay imposts or duties on imports or exports without the consent of the Congress. Art. I, § 10, par. 2.

The Congress may determine what articles may be imported into this country and the terms upon which importation is permitted. No one can be said to have a vested right to carry on foreign commerce with the United States. *Buttfield* v. *Stranahan, supra; The Abby Dodge,* 223 U.S. 166, 176, 177; *Brolan* v. *United States,* 236 U.S. 216, 218, 219; *Weber* v. *Freed,* 239 U.S. 325, 329, 330. If the Congress saw fit to lay an embargo or to prohibit altogether the importation of specified articles, as the Congress may (*The Brigantine William,* 2 Hall's Amer.L.J., 255; Fed. Cas. No. 16700; *Gibbons* v. *Ogden, supra,* pp. 192, 193; *Brolan* v. *United States, supra; Weber* v. *Freed, supra; Atlantic Cleaners & Dyers* v. *United States,* 286 U.S. 427, 434), no State by virtue of any interest of its own would be entitled to override the restriction. The principle of duality in our system of government does not touch the authority of the Congress in the regulation of foreign commerce.

Appellant argues that the Tariff Act is a revenue measure; that it is not the less so because it is framed with a view, as its title states, of encouraging the industries of the United States (*Hampton & Co.* v. *United States,* 276 U.S. 394, 411, 412); that the duty is a tax; that the Act is not one for the regulation of commerce but is an exertion of the taxing power, and that, as such, it is subject to the constitutional limitation that the Congress may not lay a tax so as to impose a direct burden upon an instru-

mentality of a State used in the performance of a governmental function.

It is true that the taxing power is a distinct power; that it is distinct from the power to regulate commerce. *Gibbons* v. *Ogden, supra,* p. 201. It is also true that the taxing power embraces the power to lay duties. Art. I, § 8, par. 1. But because the taxing power is a distinct power and embraces the power to lay duties, it does not follow that duties may not be imposed in the exercise of the power to regulate commerce. The contrary is well established. *Gibbons* v. *Ogden, supra,* p. 202. " Under the power to regulate foreign commerce Congress impose duties on importations, give drawbacks, pass embargo and non-intercourse laws, and make all other regulations necessary to navigation, to the safety of passengers, and the protection of property." *Groves* v. *Slaughter,* 15 Pet. 449, 505. The laying of duties is " a common means of executing the power." 2 Story on the Constitution, § 1088. It has not been questioned that this power may be exerted by laying duties " to countervail the regulations and restrictions of foreign nations." *Id.,* § 1087. And the Congress may, and undoubtedly does, in its tariff legislation consider the conditions of foreign trade in all its aspects and effects. Its requirements are not the less regulatory because they are not prohibitory or retaliatory. They embody the congressional conception of the extent to which regulation should go. But if the Congress may thus exercise the power, and asserts, as it has asserted here, that it is exercising it, the judicial department may not attempt in its own conception of policy to distribute the duties thus fixed by allocating some of them to the exercise of the admitted power to regulate commerce and others to an independent exercise of the taxing power. The purpose to regulate foreign commerce permeates the entire congressional plan. The revenue resulting from the duties

" is an incident to such an exercise of the power. It flows from, but does not create the power." *Id.*

The principle invoked by the petitioner, of the immunity of state instrumentalities from federal taxation, has its inherent limitations. *Fox Film Corp.* v. *Doyal,* 286 U.S. 123, 128. It is a principle implied from the necessity of maintaining our dual system of government. *Collector* v. *Day,* 11 Wall. 113, 127; *Willcuts* v. *Bunn,* 282 U.S. 216, 225; *Indian Motocycle Co.* v. *United States,* 283 U.S. 570, 575. Springing from that necessity it does not extend beyond it. Protecting the functions of government in its proper province, the implication ceases when the boundary of that province is reached. The fact that the State in the performance of state functions may use imported articles does not mean that the importation is a function of the state government independent of federal power. The control of importation does not rest with the State but with the Congress. In international relations and with respect to foreign intercourse and trade the people of the United States act through a single government with unified and adequate national power. There is thus no violation of the principle which petitioner invokes, for there is no encroachment on the power of the State as none exists with respect to the subject over which the federal power has been exerted. To permit the States and their instrumentalities to import commodities for their own use, regardless of the requirements imposed by the Congress, would undermine, if not destroy, the single control which it was one of the dominant purposes of the Constitution to create. It is for the Congress to decide to what extent, if at all, the States and their instrumentalities shall be relieved of the payment of duties on imported articles.

The contention of the petitioner finds no support in the history of tariff acts or in departmental practice. It is

not necessary to review this practical construction. It is sufficient to say that only in recent years has any question been raised by state officials as to the authority of Congress to impose duties upon their imports.

In view of these conclusions, we find it unnecessary to consider the questions raised with respect to the particular functions of the petitioner and its right to invoke the principle for which it contends.

*Judgment affirmed.*